UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JORDAN CROWLEY,

      Plaintiff,

    v.

STRONG MEMORIAL HOSPITAL OF
THE UNIVERSITY OF ROCHESTER, ET
AL.,

      Defendants.

21-CV-1078-LJV
DECISION & ORDER

---

On October 1, 2021, the plaintiff, Jordan Crowley, commenced this action under

Title VI of the Civil Rights Act of 1964, the Patient Protection and Affordable Care Act,

and the New York State Human Rights Law.  Docket Item 1.  Crowley alleged that the

defendants—Strong Memorial Hospital of the University of Rochester ("Strong"),

Kaleida Health ("Kaleida"), and UBMD Physicians' Group—discriminated against him on

the basis of race when providing medical care in connection with a kidney transplant.

*Id.*

After the close of discovery on October 12, 2023, Crowley moved to amend the

complaint to add putative class action claims against Strong and Kaleida.  Docket Item

65.  Over the next several months, the parties had several status and settlement

conferences before United States Magistrate Judge Michael J. Roemer.  *See, e.g.*,

Docket Items 70, 72, 83, 84.  Those conferences were not fruitful, however, *see* Docket

Item 84, and so the parties briefed the motion to amend, *see* Docket Items 92, 93, 101,

109, 110.  Judge Roemer then granted that motion, Docket Item 112, and Crowley filed

the amended complaint, Docket Item 113.

On November 1, 2024, Strong and Kaleida both moved to dismiss the amended complaint's individual and putative class claims for injunctive and declaratory relief. Docket Items 115 and 116.  After Crowley responded, Docket Item 125, the moving defendants replied, Docket Items 126 and 127.  And on August 15, 2025, Judge Roemer issued a Report and Recommendation ("R&R") finding that Strong's motion to dismiss should be denied but that Kaleida's motion to dismiss should be granted. Docket Item 132.

Crowley did not object to the recommendation that Kaleida's motion be granted, but Strong objected to Judge Roemer's recommendation that its motion be denied. Docket Item 133.  Crowley then responded to the objection, Docket Item 136; Strong replied, Docket Item 137; and this Court heard oral argument, Docket Item 148.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The district court must review de novo those portions of a magistrate judge's recommendation to which a party objects.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&R, Strong's objection, the response, and the reply, as well as the materials submitted to Judge Roemer. Based on that de novo review, this Court overrules Strong's objection and accepts and adopts the R&R.

## **LEGAL PRINCIPLES**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P.

12(b)(1)).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Id.* (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)).

"A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based."  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  "When the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the complaint . . . , the plaintiff has no evidentiary burden."  *Id.* (italics omitted).  But a defendant also may "make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading."  *Id.* at 57.  And "[i]n opposition to such a motion, the plaintiff[ must] come forward with evidence of [his] own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction."  *Id.* (quoting *Exch. Nat. Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).  "If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision as to standing."  *Id.*

### **BACKGROUND**[1]

For many years, eligibility for a kidney transplant depended on one's race. Docket Item 113 ¶ 6.  More specifically, because of the belief that Black individuals have greater muscle mass than non-Blacks, race was a factor in deciding priority

---

[1] The following facts are taken from the amended complaint, Docket Item 113, and from Strong's attestation cited in support of its motion to dismiss, Docket Item 92-8.

placement on the transplant list.  *Id.* ¶¶ 6-10.  And as a result, many Black individuals, including Crowley, had to wait longer to get a new kidney.  *Id.* ¶¶ 10-12.

In 2022, as a result of a change in policy, that practice ended.  *Id.* ¶ 42.  In fact, Strong cites the new policy and says that race-based criteria no longer affect kidney transplant priority or the treatment of patients with kidney disorders.  *See* Docket Item 92-8; *see also* Docket Item 133 at 23.[2]  But despite Crowley's acknowledgement that he already has had a kidney transplant, *see* Docket Item 113 ¶ 54, he says that the effect of the race-based criteria has not yet been eliminated at Strong, *id.* ¶¶ 43-45, 55-56.  As a result, Crowley says, not only has he been injured by race-based discrimination in the past, but he also risks future injury because of Strong's failure to fully implement the new policy and successfully apply race-neutral criteria.  *Id.*  He therefore seeks money damages as well as declaratory and injunctive relief on behalf of himself and others similarly situated.  *Id.* at 29-30.

## **DISCUSSION**[3]

Strong objects to the recommendation that its motion to dismiss be denied. Docket Item 133.  More specifically, Strong contests Judge Roemer's findings that Crowley has standing and that his claims are not moot.[4]  *See id.*

---

[2] Page numbers in docket citations refer to ECF pagination.

[3] The Court assumes the reader's familiarity with the background of this case and Judge Roemer's analysis in the R&R.  *See* Docket Item 132.

[4] As noted above, Crowley did not object to the R&R's finding that he lacks standing to pursue claims for injunctive and declaratory relief against Kaleida.  *See* Docket Item 132.  Although not required to do so, this Court nevertheless has reviewed the R&R as well as the parties' submissions as they relate to Kaleida's motion to dismiss.  *See* Docket Items 116, 125, and 126.  Based on that review and the absence

## I.    STANDING

For a plaintiff to have standing, he or she "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000)). "A plaintiff proceeding against multiple defendants must establish standing as to each defendant and each claim." *Holland v. JPMorgan Chase Bank, N.A.*, 2019 WL 4054834, at *6 (S.D.N.Y. Aug. 28, 2019) (citing *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 65-66 (2d Cir. 2012); *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011)).

A plaintiff also "must demonstrate standing . . . for each form of relief that [the plaintiff] seek[s] (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). "Therefore, a plaintiff's standing to seek injunctive relief does not necessarily mean that the plaintiff has standing to seek retrospective damages," and vice versa. *See id.* at 436.

"[A] person exposed to risk of future harm may pursue forward-looking injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *Id.* at 435. And where a plaintiff seeking an injunction fails to allege a likelihood of harm sufficient for his individual standing, he cannot seek injunctive relief on behalf of a class. *See O'Shea v. Littleton*, 414 U.S. 488,

---

of any objections, the Court accepts and adopts Judge Roemer's recommendation to grant Kaleida's motion.

494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

Judge Roemer found that Crowley had standing to pursue his claims for injunctive and declaratory relief against Strong.  Docket Item 132 at 13.  More specifically, Judge Roemer found that "the fact that Strong adjusted Crowley's waitlist time and provided him with a kidney transplant in November of 2023 [wa]s not a bar to his standing" because Crowley "continue[d] to receive renal and post-kidney transplant care from Strong."  *Id.* at 15.  Judge Roemer also noted that it was "foreseeable that [Crowley would] need another kidney transplant in the future."  *Id.*  Likewise, Judge Roemer found that Strong's elimination of race-based criteria for kidney treatment and transplants did not bar standing because "Crowley's allegations, considered in their totality, suggest[ed] that some of his medical records d[id] not reflect the change []or recalculation of his waitlist date, resulting in confusion and ongoing mistakes in his medical care."  *Id.* at 17.

Strong objects to these findings for several reasons.  First, Strong argues that the allegations on which Judge Roemer relied are "speculative and conclusory, and alleged upon information and belief without a supporting factual basis."  Docket Item 133 at 14.  For example, Strong says that it is nothing more than speculation to suggest that Crowley's post-transplant medical care will be affected by Strong's prior use of the race-based criteria.  *Id.* at 14-15.  Along the same lines, Strong says that it is "totally speculative" that Crowley will need another kidney transplant in the future.  *Id.* at 15 n.2.  Second, Strong argues that Crowley does not allege that there are any actual mistakes

in his medical records and that Judge Roemer therefore erred in finding that Crowley's allegations establish a substantial risk of future injury. *Id.* at 17-20. And Strong says that even if Crowley's medical records include inaccurate waitlist start dates, Crowley does not allege how those inaccuracies impact his current condition. *Id.* at 16-18. But those objections miss the mark.

As Judge Roemer noted, Crowley alleges that he continues to receive regular medical care related to his kidney health at Strong, including monthly bloodwork, treatment for urinary tract infections, prescriptions, and checkups. Docket Item 132 at 9, 15; Docket Item 113 ¶¶ 52-53. Crowley also says that given his age and current medical science, he probably will need another transplant at Strong in the next decade.[5] Docket Item 113 ¶ 54; *see* Docket Item 132 at 9, 15. And Crowley alleges that Strong has not yet updated his medical records to accurately reflect the implementation of race-neutral criteria and that these inaccuracies will result in continued race-based discrimination in his kidney care. Docket Item 113 ¶ 43; Docket Item 132 at 16-17. In other words, Crowley claims that Strong's continued "discriminatory conduct . . . poses a real and repeated threat of future injury." *See* Docket Item 132 at 15.

Judge Roemer correctly found that those allegations are sufficient to confer standing because a plaintiff "does not have to await the consummation of threatened injury to obtain preventative relief." *See id*. at 15 (quoting *Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 415 (S.D.N.Y. 2012)). Indeed, even if Crowley

---

[5] The complaint alleges that a kidney transplant typically lasts seven to nine years. Docket Item 113 ¶ 54. Although Strong argues in its objections that this fact is too speculative to be considered, Docket Item 133 at 15, at oral argument Strong conceded that given present circumstances Crowley may well need another transplant.

has not pleaded specific harm from the alleged inaccuracies in his medical records, he certainly has pleaded a significant threat of future injury—a "threatened injury" that "is particularly severe." *See Brooklyn Ctr. for Indep. of the Disabled*, 290 F.R.D. at 415 (citing *Baur v. Veneman*, 352 F.3d 625, 637 (2d Cir. 2003) ("Because the evaluation of risk is qualitative, the probability of harm which a plaintiff must demonstrate in order to allege a cognizable injury-in-fact logically varies with the severity of the probable harm.")).

In fact, Crowley pleads that continued racial discrimination in the medical care of Black patients with kidney issues and delays in receiving a transplant may be life threatening to him and others like him. Docket Item 113 ¶¶ 44, 55-56; Docket Item 132 at 15-17. In other words, "Crowley has alleged that Strong has not fully and correctly implemented the race-neutral [criteria], and that its failure to do so exposes him to imminent and substantial future harm in regard to his future medical care." *Id.* at 17. And that is sufficient to establish standing at the pleading stage. *Cf. Cacchillo*, 638 F.3d at 404 (because "[a] plaintiff's burden to demonstrate standing increases over the course of litigation," what is sufficient at the pleading stage may not be enough on summary judgment).

The Court agrees with Judge Roemer that the cases on which Strong relies are distinguishable. *See* Docket Item 132 at 19-20. For example, Strong cites *Welch v. United Network for Organ Sharing*, 767 F. Supp. 3d 746 (M.D. Tenn. 2025), to support its argument that Crowley does not have standing. *See* Docket Item 133 at 16. But in that case, the complaint was "devoid of any allegations demonstrating that granting [the] injunctive relief would have any impact on [the plaintiff's] current condition." *Welch*, 767

8

F. Supp. 3d at 761.  Indeed, the plaintiff in *Welch* conceded that "his treatment [wa]s no longer subject to the race-based coefficient."  *Id.*  Not so here where Crowley alleges that Strong's inaccurate implementation of the race-neutral criteria means that race-based criteria continues to affect his care.  *See* Docket Item 113 ¶¶ 43, 56; Docket Item 132 at 20.

Strong also cites *Robinson v. Bureau of Prisons*, 2023 WL 4531826, at *7 (D.D.C. Jul. 13, 2023), where the court found that a plaintiff might establish standing by alleging that the defendant's "use of the [race-based criteria] continued to affect [him] in some way."  *See* Docket Item 133 at 16.  Here, Crowley alleges just that:  He says that Strong's prior use of the race-based criteria still infects his medical records and risks continued discrimination in his treatment.  *See* Docket Item 113 ¶¶ 43, 56; Docket Item 132 at 20.

Finally, Strong argues that Judge Roemer improperly shifted the burden by requiring the defendant to "conclusively disprove" Crowley's allegations.  Docket Item 133 at 20.  Strong is correct that in a fact-based Rule 12(b)(1) motion, the burden is on the plaintiff "to come forward with evidence controverting that presented by the defendant if the defendant's evidence reveals the existence of factual problems regarding standing."  *Lugo v. City of Troy, New York*, 114 F.4th 80, 87 (2d Cir. 2024) (alterations and internal quotation marks omitted) (quoting *Carter*, 822 F.3d at 57).  But this Court disagrees with Strong that Judge Roemer shifted that burden.

Judge Roemer considered Strong's evidence—including "policy statements[] from other institutions"—but found that it did "not address Crowley's allegations that Strong's own records d[id] not consistently reflect the new, race-neutral . . . scores and

waitlist dates, and that these mistakes w[ould] continue to affect the care he [wa]s receiving at Strong, both generally and in regard to future transplant eligibility." Docket Item 132 at 18. For that reason, Judge Roemer concluded that Strong's "proffered evidence [did] not contradict plausible allegations sufficient to show standing" and that Crowley therefore was "entitled to rely on the allegations in the complaint." *Id*.; *see Carter*, 822 F.3d at 57 (explaining that "plaintiffs are entitled to rely on the allegations in the [p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing"). And although Judge Roemer later used the phrase "conclusively disprove[]," it is clear from the context that he merely was reiterating his conclusion that the evidence Strong proffered did not raise an issue "of factual problems regarding standing" in the first place. *See Lugo*, 114 F.4th at 87 (citation and internal quotation marks omitted); Docket Item 132 at 20 (Judge Roemer's finding that "for the reasons just stated, . . . Crowley ha[d] sufficiently alleged, and Strong ha[d] not conclusively disproven, that problems in Strong's implementation of the new race-neutral . . . policy continue[d] to impact him").

In sum, Crowley has alleged that Strong's prior use of the race-based criteria has not been eliminated and still threatens his medical care, and the evidence Strong proffered did not contradict those allegations. For that reason, Judge Roemer did not err in holding that Crowley had standing to bring his claims for injunctive and declaratory relief.

10

## II.    MOOTNESS

"Article III of the United States Constitution provides that the judicial power of the United States extends to certain 'cases' and 'controversies.'"  *Stagg, P.C. v. U.S. Dep't of State*, 983 F.3d 589, 601 (2d Cir. 2020) (quoting U.S. Const. art. III, § 2).  "Mootness is 'standing set in a time frame.'"  *Stafford v. IBM*, 78 F.4th 62, 67 (2d Cir. 2023) (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1997)).  "A case becomes moot—and therefore no longer a '[c]ase' or '[c]ontroversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Id.* (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

Judge Roemer found that even though Strong submitted an attestation confirming that it had completed the waitlist adjustment process based on race-neutral criteria, Docket Item 92-8, Crowley's class claims still survived.  *See* Docket Item 132 at 21-22.  Judge Roemer observed that "Crowley allege[d] that this process was done incorrectly or inaccurately, not that it failed to occur," so crediting Strong's attestation that the process was complete did not render the claims moot.  *Id.* at 21.  Judge Roemer also concluded that class-wide discovery was necessary to flesh out whether there are identifiable and ongoing issues with the implementation of the race-neutral criteria.  *Id.* at 24.

Strong first argues that Judge Roemer "fail[ed] to recognize that [Crowley] did not identify specific inaccuracies or errors in his own recalculation" and "that [Crowley therefore] lack[ed] standing to pursue injunctive relief on behalf of a class."  Docket Item 133 at 25.  But Judge Roemer did not fail to recognize those issues.  On the contrary, he explicitly found that while the amended complaint lacked "detailed examples of

11

issues or problems with the recalculation process" it was more appropriate to let Crowley "complete class-wide discovery rather than subject his claims to dismissal at the pleadings stage." Docket Item 132 at 21-22 (citing *Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 598 (2d Cir. 1988) ("Before dismissing a case for want of jurisdiction, a court should permit the party seeking the court's intervention to engage in discovery of facts supporting jurisdiction.")).

And this Court agrees with him. "[C]ourts generally require that plaintiffs be given an opportunity to conduct discovery on . . . jurisdictional facts, at least where the facts, for which discovery is sought, are peculiarly within the knowledge of the opposing party." *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004) (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)). Crowley says that he has not had the opportunity to conduct discovery on Strong's "policy changes, new policy implementation, and process of collecting and recalculat[ing] information from patients' lab reports." Docket Item 136 at 16. So as Judge Roemer found, Crowley should have that opportunity.

Ultimately, class discovery may not yield evidence of inaccuracies in patients' medical records related to race-neutral recalculation. But that is an issue for summary judgment. As Judge Roemer explained, at the summary judgment stage "Crowley will have to produce competent evidence . . . showing that there were inaccuracies or problems in the waitlist adjustments for class members." Docket Item 133 at 22. And if he cannot, his claims will be subject to dismissal. *Id.*

12

Strong also argues that Judge Roemer incorrectly found that the voluntary cessation doctrine did not render this case moot. Docket Item 133 at 25-26. Again, this Court disagrees.

Under the voluntary cessation doctrine, a "defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). To meet that burden, the defendant must show that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation" and that "there is no reasonable expectation that the alleged violation will recur." *Granite State Outdoor Adver., Inc. v. Town of Orange*, 303 F.3d 450, 451 (2d Cir. 2002) (per curiam).

As already discussed, Crowley alleges that there are problems with Strong's implementation of the race-neutral criteria and that the effects of the previously used race-based criteria persist. Docket Item 113 ¶¶ 43, 55-56; *see* Docket Item 132 at 21. So while Strong insists that it has completed the transition to race-neutral criteria and that there is no chance that race-based criteria will ever be used again, it has not met its heavy burden of showing that it has "irrevocably eradicated the effects of" the race-based criteria. *See Granite State Outdoor Adver.*, 303 F.3d at 451. Judge Roemer therefore correctly found that the voluntary cessation doctrine does not render Crowley's class claims moot.

In sum, this Court agrees with Judge Roemer that Crowley's class claims are not moot at this stage. Crowley therefore should and will have the opportunity to pursue

class-wide discovery before being required to provide specific proof in support of his claims.[6]

### CONCLUSION

For the reasons stated above and in the R&R, Strong's motion to dismiss, Docket Item 115, is DENIED, and Kaleida's motion to dismiss, Docket Item 116, is GRANTED. The case is referred back to Judge Roemer for further proceedings consistent with the referral order of October 24, 2023, Docket Item 67.


SO ORDERED.


Dated:   August 6, 2026
         Buffalo, New York


*/s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

[6] Strong also argues that Judge Roemer failed to separately consider the availability of declaratory relief and says that Crowley's requested declaratory relief addresses only past injury.  Docket Item 133 at 27-28.  But for the reasons explained above, this Court finds that Crowley's allegations about medical records raise issues of ongoing harm.  Therefore, at this stage of the litigation, the requested declaratory relief survives the motion to dismiss.